ADELIA A. LEONARD, appellant,

*v.*

LEONIA HEIGHTS LAND COMPANY et al., respondents.

[Argued March 11th, 1913.   Decided June 18th, 1913.]

Section 54 of the Conveyances act of 1898 (*Comp. Stat. p. 1553*) is not applicable to assignments of mortgage.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported *ante p. 43.*

Bill to foreclose.   The mortgage was given by Edward T. Flood to Edward H. Ryan to secure $6,000.   It is dated June 4th, 1904, was recorded June 17th, 1904, and conveyed six

vacant lots worth only $3,000, part of ·a tract of land which Ryan was developing for sale. Ryan assigned the mortgage to Adelia A. Leonard, the complainant, by assignment dated September, 1904, but not recorded until December 3d, 1910. The complainant paid full value. On April 11th, 1905, Flood conveyed the premises to Ryan. On September 23d, 1905, Ryan and wife conveyed to Margaret F. Cornell by deed recorded October 27th, 1905. Cornell conveyed to the Leonia Heights Land Company by deed dated September 26th, 1905, recorded October 27th, 1905. Cornell was a "dummy," as is said, of Ryan. The land company in exchange for the land issued to Ryan half its capital stock and gave him a mortgage for $4,375, covering the six lots and other lands. This mortgage came by assignments to the Hudson Finance Company, and has · been reduced by payments to $440. The Leonia Heights Land Company knew of the complainant's mortgage when it took title, and made inquiries of Ryan who assured them that it was misplaced but he would find it; they assumed from the fact that the mortgage was so large, double the amount they were paying for the property, and was made by Flood, that it was a dummy mortgage.

*Mr. Louis A. Cowley* (*William W. Watson* on the brief), for the appellant.

*Mr. Frederick P. Schenck* (*J. Boyce Smith, Jr.,* on the brief), for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

The question presented is one of statutory construction. But for the recording acts the complainant's position would be impregnable. She holds a duly recorded mortgage prior in time to any right of the land company or those claiming under it, and this priority· will be displaced if the ·decree is affirmed. There was not only the constructive notice to the defendants by the record of the mortgage, but actual notice to the land

company. What was lacking was notice of the assignment from Ryan to the complainant. The proposition of the defendants, therefore, is that under the circumstances of this case the mortgage has become waste paper by reason of the failure to record the assignment, so that while in fact the complainant's title is paramount, in law it is void. The logical process by which the learned vice-chancellor reached this result was twofold. In one part of the opinion he relies upon the theory that, by the failure to record, the assignment was made void by section 54 of the Conveyances act; that Ryan seemed on the face of the record to be the owner of the mortgage at the time Flood conveyed to him the equity of redemption, and·hence the land company had the right to assume that his estate as mortgagee merged in his ownership of the fee. In another part of the opinion he relies upon the theory that, as the assignment was unrecorded, the land company might safely pay the mortgage to Ryan by virtue of section 34 of the Mortgage act. *Comp. Stat. p 3419.* It was necessary for the support of either theory to find that the land company was a *bona fide* purchaser for value without notice. We are not disposed to question this, although the giving of a purchase-money mortgage and the issue of stock in the company does not suffice to give the land company the protection accorded to such a purchaser. *Haughwout* v. *Murphy, 22 N. J. Eq.* (*7 C. E. Gr.*) *531.* The point is, however, not important since the subsequent mortgage given by the land company has been reduced by payments from $4,365 to $440, and to the extent of these payments, at least, the defendants may perhaps be *bona fide* purchasers for value. We need not pursue that subject, since we think the decree must be reversed on other grounds.

Section 54 of the Conveyances act (*Rev. 1898; Comp. Stat. p. 1553*) enacts that every instrument of the nature or description set forth in the twenty-first section (among which are assignments of mortgage) shall until duly recorded or lodged for record, be void and of no effect against subsequent judgment creditors for valuable consideration, not having notice thereof, whose deed or mortgage shall have been first duly recorded. The vice-chancellor thought that this section applied to assign-

ments of mortgage. The words are broad enough to include those instruments, but statutes are not to be construed with our eyes closed to the history that lies back of them. The act is a revision of pre-existing legislation, and the intent to change the law in a revision must be clear. *State* v. *Lang, 75 N. J. Law* (*46 Vr.*) *502, 511; Trenton* v. *Standard Fire Insurance Co., 77 N. J. Law* (*48 Vr.*) *757, 760; Newark* v. *Tunis, 81 N. J. Law* (*52 Vr.*) *45, 47; affirmed, 82 N. J. Law* (*53 Vr.*) *461.* Good illustrations of the practical application of the rule are to be found in *In re Murphy, 23 N. J. Law* (*3 Zab.*) *180; Campbell* v. *Hale, 25 N. J. Law* (*1 Dutch.*) *324; Clement* v. *Kaighn, 15 N. J. Eq.* (*2 McCart.*)*47; Knight* v. *Freeholders of Ocean, 49 N. J. Law* (*20 Vr.*) *485, 487, 488; O'Hara* v. *National Biscuit Co., 69 N. J. Law* (*40 Vr.*) *198.*

Section 54 of the Conveyances act deals with the effect of failure to record, section 53 with the effect of recording, and the two must be dealt with as parts of the same statutory scheme. Prior to the revision of the Conveyances act in 1898 the law had protected persons making payments to or securing releases from the assignor of a mortgage whose assignment was not recorded. *Comp. Stat. p. 3419* § *34.* The persons protected by this section were the mortgagor and those claiming under him. The assignee, on the other hand, was protected by recording his assignment, for the record was made notice to all persons concerned that the mortgage had been assigned. *Comp. Stat. p. 3418* § *32.* These provisions are necessary to the protection of persons who deal with the assignor as if he were still the holder of the mortgage, where the failure of the assignee to record his assignment has made it possible for them to be misled; and to the protection of the assignee where the mortgagor and those claiming under him continue to deal with the assignor in spite of the assignment. The revisers could never have meant to deprive either class of the protection of sections 32 and 34 of the Mortgage act. They have done so, however, if sections 53 and 54 of the Conveyances act cover the whole subject and operate as an implied repeal. Section 53 makes the record of instruments mentioned in section 21, notice to subsequent judgment creditors, purchasers and mortgagees. This

differs from section 32 of the Mortgage act, which makes the record of the assignment notice to all persons concerned, and does not limit its effect to judgment creditors, purchasers and mortgagees. If section 53 of the Conveyances act has superseded section 32 of the Mortgage act, then an assignee of a mortgage who duly records his assignment is not protected by the record, and the mortgage may be paid to his assignor, unless actual notice is given, for the mortgagor is neither subsequent judgment creditor nor subsequent purchaser or mortgagee. The case has actually arisen. *Mayer* v. *McLaughlin, 80 N. J. Eq. (10 Buch.) 342.* In the same way if section 54 of the Conveyances act covers the whole subject and operates as an implied repeal of section 34 of the Mortgage act, the mortgagor is no longer protected in making payments and securing releases from the one who appears on the record as holder of the mortgage; for section 54 makes the instruments void only as to *subsequent* judgment creditors, *subsequent bona fide* purchasers and mortgagees; the mortgagor's title is necessarily antecedent and not subsequent to the assignment. The provisions of the Conveyances act are inconsistent with the provisions of the Mortgage act, and were not meant to supersede it. Since sections 32 and 34 of the Mortgage act are still in force, no useful purpose is served with reference to assignments of mortgage by section 54 of the Conveyances act unless it be the protection of a subsequent purchaser of the mortgage who might be misled into buying it of the assignor by reason of his seeming title arising out of the failure of the assignee to record the assignment. But even this purpose is not served. The word "purchaser" in section 54 means purchaser of the land, not purchaser of the mortgage. It is modeled after section 3 of an act respecting the record of transfer of *real* property. *P. L. 1883 p. 215; Gen. Stat. p. 882.* The words "whose deed or mortgage shall have been first duly recorded" come from that act. This view is fortified by the collocation of the word "purchaser" with the word "mortgagees;" the latter word naturally applies to land; the corresponding word, if the holder of the mortgage had been meant, would have been pledgees. We ought not, of course, to attribute a double meaning to the word "purchaser" unless we are compelled so to

do, and every purpose of section 54 will be served by holding that purchasers does not include purchasers of the mortgage but only purchasers of the land, as is meant in the act from which the language was taken.

We need not, however, rest on the absence of useful purpose alone. The subsequent language of section 54 shows that it does not apply to assignments of mortgage. By a proviso nothing in the act is to be construed to affect or impair the effect of any mortgage or the registry thereof which shall be registered as provided in section 17 of the Mortgage act, and the intent of the legislature to except registered mortgages is emphasized by the fact that in copying from the act of 1883 the clause above quoted, the words "or registered" were omitted. If section 54 applies to assignments of mortgage, it applies only to assignments of recorded mortgages. It is inconceivable that the legislature meant that an unrecorded assignment of a registered mortgage should be binding, but that an unrecorded assignment of a mortgage recorded in full should be void; that would be to handicap the more prudent and careful mortgagee. Moreover, if we read purchaser and mortgagee as meaning purchaser and mortgagee of the land, as we think we must, the language of section 54 is singularly inapt to protect such a purchaser or mortgagee in case of an unrecorded assignment. The statutory declaration is that the unrecorded instrument shall be void. The avoidance of the instrument when it is an assignment of mortgage does not help the purchaser of the land. What he is concerned with is the mortgage; the question who owns it is of no moment to him until he comes to make a payment thereon either of principal or interest; and when he comes to that point he is concerned with the question who really and in fact owns the mortgage, not with the question whether any particular instrument that evidences the ownership is void or not. If Mrs. Leonard's instrument of assignment is void, her mortgage is still good; she has an equitable title thereto by the delivery from Ryan. *Daly* v. *New York and Greenwood Lake Railway Co.*, *55 N. J. Eq.* (*10 Dick.*) *595;* affirmed on opinion, *57 N. J. Eq.* (*12 Dick.*) *354.*

Assignments of mortgage are not specifically mentioned by name in section 54. If included at all it must be because they are among the deeds or instruments mentioned specifically in section 21. Other deeds and instruments are mentioned in that section to which section 54 is as inapplicable as it is to assignments of mortgage. Among them are discharges and releases of mortgage and chattel mortgages. Discharges and releases could never be adverse to or have effect *against* subsequent judgment creditors, purchasers or mortgagees, but would always be to their advantage by getting out of their way antecedent liens; but if we disregard, as we ought, the words "as against" and read them "as to" (their proper meaning here), we then have the statute making discharges and releases void as to subsequent judgment creditors, purchasers and mortgagees; that is to say, the prior liens which have been discharged or released will be restored by the failure to record the discharge or release, or in other words a discharge or release, unlike other deeds, must be recorded as well as delivered in order to become effective. This seems a sufficient *reductio ad absurdum,* and demonstrates that the words of section 54 are not to be taken literally. They were not taken literally in the supreme court when chattel mortgages were excluded from their operations. *Brown* v. *Harris, 67 N. J. Law (38 Vr.) 207.* If section 54 were construed broadly as it reads, it would apply to chattel mortgages and make them void as against subsequent judgment creditors without notice, and subsequent *bona fide* purchasers and mortgagees for valuable consideration, not having notice thereof whose deed or mortgage should have been first duly recorded. The Chattel Mortgage act of 1885 (*Gen. Stat. p. 2112*) as well as the present act of 1902 (*Comp. Stat. p. 463*) makes an unrecorded chattel mortgage void as against creditors (not merely subsequent judgment creditors) and subsequent purchasers and mortgagees in good faith (not merely those whose mortgage has been first duly recorded). The supreme court held that the Chattel Mortgage act was not repealed by section 54 of the Conveyances act, and that an unrecorded chattel mortgage was void as to a landlord distraining for rent.

The learned vice-chancellor did not fail to observe that merely avoiding the instrument of assignment under which complainant claims, would not deprive her of her paramount title, and he held that the mortgage was avoided either by merging in the fee-simple or by payment. Both merger and payment were notional or constructive only. Neither existed in fact. There was no merger in fact because the mortgage never belonged to the owner of the fee. When Flood owned the fee, Ryan or the complainant owned the mortgage; when Ryan and those claiming under his deed to the land company owned the fee, the complainant still owned the mortgage.

There was never a time when the owner of the fee and the owner of the mortgage were the same person. Nor was there an apparent merger arising from the state of the record at the time the land company took title. The owner of the fee at that time was Cornell; the apparent owner of the mortgage according to the record was Ryan. It is true that prior to the deed to Cornell, Ryan appeared on the record as owner both of the mortgage and of the equity of redemption, but the land company was entitled to rely only on the apparent state of the title when Cornell conveyed to them. If Cornell could otherwise have relied on the apparent state of the title when Ryan conveyed to her, she would have failed to secure that advantage by reason of the fact that she was not a *bona fide* purchaser for value without notice but only Ryan's dummy. In fact the land company did not rely on the theory of a merger; what they relied on was Ryan's promise to let them have the mortgage; they thought that the complainant's mortgage for double the value of the vacant lots was a dummy mortgage created by Ryan to give a fictitious value to the land, and they relied on him to get rid of it. The case resembles *Harrison* v. *New Jersey Railroad and Transportation Co., 19 N. J. Eq. (4 C. E. Gr.) 488.* The very fact that they took their title from Cornell, and knew that the mortgage was in Ryan's hands, shows that they did not rely on a merger. It makes no difference that Cornell was Ryan's dummy. The title might have been put in her for the express purpose of preventing a merger.

Whether the theory of payment is consistent with the theory

of merger, we do not stop to consider. There was no payment in fact. So far as the consideration was the issue of the land company stock to Ryan, payment was for him to make; it was an original issue of stock, not the transfer of stock already outstanding; Ryan must pay for it either in money or in property equal in value to the part of the stock; the issue of the stock created an obligation on Ryan's part which he discharged, if he discharged it at all, by causing Cornell to convey the land; it would be anomalous to hold that the creation of an obligation on his part was a payment to him. So far as the consideration was the purchase-money mortgage, neither party regarded that as a payment on account of the old mortgage. The whole position of the land company was inconsistent with the idea of payment; they thought the mortgage fictitious, and were not misled into the view that it was a valid lien to be paid. The doctrine of estoppel cannot be invoked. The land company did not assume to pay the apparent owner of the mortgage; they assumed to deal with Cornell and to treat Ryan as still holding the mortgage, not as having been paid the amount due thereon. For similar reasons we are unable to hold that the mortgage has been released. No one supposed that it was being released or that a fictitious mortgage needed to be released, but if the facts were different the alleged release would have been from Ryan to Cornell, and Cornell is chargeable with notice, and there is no proof to overcome the presumption; section 34 of the Mortgage act applies only to releases "to a person not having actual notice of such assignment."

For these reasons the decree must be reversed and the record remitted for further proceedings in accordance with this opinion.

*For affirmance*—MINTURN, KALISCH—2.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, BOGERT, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER—12.