U.S. SMALL BUSINESS ADMINIS-
TRATION, as Receiver for Bish-
op Capital, L.P., Plaintiff,

v.

Robert MARTIGNETTI and Laurie
Martignetti, Mellon Mortgage Compa-
ny, Eugene T. Kendig, Mary M. Ken-
dig, James O'Brian a/k/a James
O'Brien and James J. Hall, Defen-
dants

and

Robert Martignetti and Laurie
Martignetti, Defendants and
Third Party Plaintiffs

v.

State Street Bank and Trust Co.,
Third Party Defendant,

v.

Lawyers Title Insurance Corp., First
American Title Insurance Co., and
Shapiro & Kriesman, Fourth Party
Defendants,

v.

Marguerite M. Schaffer, Esq, and
Shain, Shaffer & Rafanello,
Fifth Party Defendants.

No. CIV. 99–2949(DRD).

United States District Court,
D. New Jersey.

May 24, 2000.

Robert J. Cleary, United States Attor-
ney, Neil R. Gallagher, Assistant United
States Attorney, Newark, NJ, John G. Sil-
bermann, Trial Attorney, U.S. Small Busi-
ness Administration, Washington, DC, for
Plaintiff.

Robert L. Grundlock, Jr. Rubin, Ehr-
lich, Buckley, P.C., Princeton, NJ, for De-
fendants Robert and Laurie Martignetti,
and fourth party Defendant First Ameri-
can Title Insurance Co.

Christopher J. Fox, Mark J. Udren &
Associates, Cherry Hill, NJ, for Defendant
State Street Bank.

Craig L. Levinsohn, Winne, Banta, Riz-
zi, Hetherington & Basralian, P.C., Hack-
ensack, NJ, for Defendant Lawyers Title.

Jeffrey A. Grabowski, Shapiro & Kreisman, Marlton, NJ, for Defendant Shapiro & Kreisman.

Christopher J. Carey, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Newark, for Defendants Marguerite Schaffer and Shain, Schaffer & Rafanello.

## OPINION

DeBEVOISE, Senior District Judge.

In this foreclosure action plaintiff, U.S. Small Business Administration, as Receiver for Bishop Capital, L.P. (the "Receiver"), seeks to foreclose on real property (the "Property") currently owned by defendants, Robert and Laurie Martignetti.[1] The Receiver relies upon a June 1991 assignment to Bishop Capital, L.P. ("Bishop") of a mortgage upon the Property. Defendants challenge the viability of the assignment. The Receiver and defendants have cross-moved for summary judgment.

### Statement of Facts

On July 3, 1986, Doris Hildebrandt (then 78 years old, and presently deceased) conveyed the Property, 94 Sandy Point Drive, Brick Township, New Jersey to her son and his wife William and Suzanne Hildebrandt ("the Hildebrandts") for $117,500. The Hildebrandts made a $17,500 down payment to William's brother and gave Doris a note for the purchase price balance of $100,000. The note recited that "[t]he lender has been given a Mortgage dated July 3rd 1986, to protect the Lender if the promises made in this note are not kept." In fact no mortgage was given to Doris at that time. On January 1, 1987, the Hildebrandts executed and delivered to Doris a mortgage on the Property which was recorded on April 8, 1987 (the "Doris Mortgage"). The Doris Mortgage was to be paid according to "my [William Hildebrandt and Suzanne Hildebrandt] note dated the same date as this mortgage..."

but no note dated January 1, 1987 has been produced.

During the period from July 3, 1986, and April 8, 1987, the Hildebrandts executed two other mortgages on the Property. On November 19, 1986, they secured a $110,000 loan from Peoples Bank, N.A. ("Peoples") with a mortgage on the Property. The Hildebrandts had borrowed $40,000 from First Commercial Mortgage Corporation, securing the loan with a mortgage on the Property. On January 9, 1987, this mortgage was assigned to Society for Savings ("Society"). Both of these mortgages were recorded before the Doris Mortgage was recorded on April 8, 1987.

In 1990, with three mortgages on the Property, the Hildebrandts contracted with Concorde Mortgage Corp. ("Concorde") to refinance with a $195,000 loan. This loan had to be secured by a first mortgage, requiring that the Doris Mortgage and the People's and Society's mortgages be dealt with. The settlement sheet from the Concorde closing reflects that Peoples and Society were paid and their mortgages satisfied. The Concorde settlement statement also discloses a $60 charge for discharging three mortgages at $20 per discharge. The principal controversy in this case arises out of the handling of the Doris Mortgage at the time of the Concorde refinancing.

According to William Hildebrandt, Doris had been assured that she would continue to have a mortgage lien on the Property and that such lien would be in a no less than second position. He asserts that he planned to achieve this result by having Doris subordinate her interests to those of Concorde.

In fact, however, Marguerite M. Shaffer, Esq., who represented the Hildebrandts at the closing, prepared a discharge of mortgage (the "Discharge") which Doris exe-

---

1. Third, Fourth and Fifth Party complaints have been filed against the bank which sold the Property to defendants, against title insurance companies and against an attorney.

These complaints are not the subject of the pending cross-motions for summary judgment.

cuted. Shaffer executed a certification to Concorde guaranteeing it a first lien on the Property. The Hildebrandts signed an affidavit of title stating that:

> We have not allowed any interests (legal rights) to be created which affects our ownership... No other persons have legal rights in this property. There are no... other legal obligations which may be enforced against this property.

Doris signed the Discharge on June 18, 1990. The Concorde closing was held on July 10, 1990. Concorde's mortgage was recorded on July 17, 1990. However, no attempt was made to record the Discharge until September 19, 1991, at which time the Ocean County Clerk's Office returned it unrecorded, due to an improper acknowledgment.

As a result of the failure to record the Discharge, the Doris Mortgage surfaced in two subsequent lines of transactions: i) the transfers which ultimately resulted in a sale of the Property to defendants, and, ii) the Hildebrandts' use of the Doris Mortgage to obtain additional financing.

As to the transfers: Concorde assigned its mortgage to Newton Savings Bank ("Newton") and then both entities went out of business. The Hildebrandts defaulted on the Concorde mortgage within eight months. The RTC seized Newton. EMC Mortgage Corp. ("EMC") purchased Concorde's mortgage.

EMC commenced a foreclosure proceeding in the state court on the Concorde Mortgage.[2] On November 16, 1993, EMC purchased the Property at a Sheriff's sale conducted pursuant to the foreclosure proceedings. On November 17, 1993, EMC assigned its interests in the Property to the State Street Bank and Trust Co. ("State Street"), and on November 30, 1993, the Ocean County Sheriff deeded title to the Property to State Street.

Because the Doris Mortgage was still a lien of record, the foreclosure did not wipe it out. State Street took title subject to the Doris Mortgage. State Street sold the Property to defendants who had obtained title insurance from First American Title Insurance Co. ("First American"). First American agreed to eliminate the Doris Mortgage from its exclusion from coverage. It was that line of transactions that forms the basis of defendants' claim of ownership.

As to the Hildebrandts' additional financing: Bishop was a Small Business Investment Company licensed by the SBA to make debt and equity investments in small business concerns. One of the small business concerns to which Bishop provided financing was DM Systems, Inc. ("DM").

On May 23, 1991, Bishop loaned $175,000 to DM for the primary purpose of allowing DM to acquire a competing temporary help services firm. Concurrent with this financing, the Hildebrandts became DM shareholders and William Hildebrandt became its president. By reason of the fact that Schaffer had not recorded the Discharge of the Doris Mortgage, the Hildebrandts were able to secure the Bishop loan with an assignment of the Doris Mortgage (the "Assignment"). Thus in June 18, 1991 (one year after Doris signed the Discharge) Doris executed the Assignment of her mortgage on the Property to Bishop.

William Hildebrandt reported to Bishop's attorney that his mother (Doris) was somewhat confused about the matter, being of the belief that she had released her

---

2. As described subsequently, in 1991 Bishop Capital, L.P. loaned $175,000 to DM Systems, Inc., an entity in which the Hildebrandts held a stock interest. The Hildebrandts secured the Bishop loan with an assignment of the Doris Mortgage, notwithstanding the fact that Doris had previously executed a discharge of the Doris Mortgage. The Discharge had not been recorded and thus the Doris Mortgage was shown on the record to be superior to the Concorde mortgage. In its foreclosure proceeding EMC did not name Bishop, the assignee of the Doris Mortgage, as a defendant. Thus Bishop's interests in the Property, if any, were not cut off by the EMC foreclosure.

mortgage. In response to that information Bishop's attorney only checked to determine if the Doris Mortgage was still of record. Had he performed a full search he would have received the puzzling information that the Doris Mortgage was a lien prior to the Concorde mortgage, a circumstance which should not have prevailed in light of Concorde's reported first position.

In January 1998 DM filed a petition for protection under Chapter 11 of the Bankruptcy Code. As of March 14, 2000, Bishop had not received any payment of the principal amount of its DM financing, amounting $468,000. The Receiver now stands in the shoes of Bishop and has ascertained that there is outstanding on the Doris Mortgage a balance of $164,714,80 as of March 25, 1999, with interest of $25.17 accruing each day thereafter.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *rev'g*, 723 F.2d 238 (3d Cir.1983). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247–248, 106 S.Ct. 2505.

### Discussion

■ A. *Validity of Doris Mortgage:* Defendants challenge the validity of the Doris Mortgage from its inception, noting a number of formal defects: i) the $100,000 note recites that the lender was given a mortgage dated July 3, 1986, when in fact no such mortgage was given; ii) the Doris Mortgage was executed on January 1, 1987, and incorrectly refers to a note dated the same date as the Mortgage; iii) the Doris Mortgage, though purporting to be a purchase money mortgage was not executed until six months after the conveyance and was not recorded for another three months; iv) no consideration was in fact given for the mortgage; and v) no payments were made on the mortgage.

Despite these deficiencies, the Doris Mortgage at its inception created a valid lien securing the purchase price which the Hildebrandts owed to Doris. Under N.J.S.A. § 25:1–5 the requirements for an effective mortgage in New Jersey are that it be in writing and signed by the mortgagor. The Doris Mortgage meets those requirements. It is not controverted that the Hildebrandts purchased the Property from Doris, nor are the terms of the purchase controverted, most of which are set forth in the Mortgage, although the Doris Mortgage referred to a note dated January 1, 1987 which has not been produced. The formal errors do not affect the substance of the transaction and do not detract from the notice to the world provided by the recording of the Mortgage.

A mortgage given to secure an antecedent debt is valid and enforceable. "A mortgage, as an executed transfer of a security interest in land, need not be supported by any 'new consideration' ... [a] mortgage given to secure an antecedent debt is valid and enforceable." 29 New Jersey Practice, Law of Mortgages § 14 at 33 (Roger A. Cunningham & Saul Tischler) (1975); *Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 170, 459 A.2d 1163 (1983). Thus the January 1, 1987, Doris Mortgage securing the $100,000 obligation which the Hildebrandts incurred in July 1986 was valid notwithstanding the fact that it secured an antecedent debt. Its priority, of course, was affected by the fact that the People's and Society's mortgages were recorded before it.

The critical issue in this case is not the validity of the Doris Mortgage at the time it was executed and recorded. The critical issue is whether a viable Doris Mortgage was assigned to Bishop on May 23, 1991. Doris executed and delivered a Discharge of that Mortgage in order that Concorde could have a first lien position. However, the Discharge had not been recorded and the Doris Mortgage remained a lien of record.

B. *Effect of Discharge Upon Assignment:* The Receiver relies upon N.J.S.A. 46:22–1 to support the priority of his position (acquired through Bishop) over that of the defendants. That statute provides:

Every deed or instrument of the nature or description set forth in section 46:16–1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against all subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

By its terms this statute voiding unrecorded instruments (such as mortgage discharges) is inapplicable in the present case. Bishop was not a subsequent judgment creditor, a bona fide purchaser of the property or a mortgagee. It was simply an assignee of a mortgage. As will be developed below, it was not without notice, or without knowledge of facts putting it on notice of the Discharge.

█ The effect of an assignment of a mortgage is set forth in N.J.S.A. 46: 9–9 which provides:

All mortgages on real estate in this State, and all covenants and stipulations therein contained, shall be assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name, but, in any such action by the assignee, there shall be allowed all just set-offs and other defenses against the assignor that would have been allowed in any action brought by the assignor and existing before notice of such assignment.

█ By the terms of these provisions "[t]he assignee takes the mortgage subject to all defenses which the mortgagor may urge against it, whether the assignee has notice of such defenses or not." *S.D. Walker, Inc. v. Brigantine Beach Hotel Corp.*, 44 N.J.Super. 193, 201, 129 A.2d 758 (1957). Bona fide purchaser for value without notice concepts are inapplicable in this situation, as "the assignee who seeks to enforce a mortgage enjoys no such position as the holder in due course who sues upon a negotiable note." *Mardirossian v. Wilder*, 76 N.J.Super. 37, 42, 183 A.2d 761 (1962). In the present case when Doris, the mortgagee, executed the Discharge and delivered it in order that Concorde

could have a first priority position, she created an absolute defense to a suit on the Doris Mortgage. This defense existed at the time, one year later, when she assigned the Mortgage to Bishop. Bishop's rights as assignee could "rise no higher than" those of Doris, the assignor. *Mayo v. City National Bank and Trust Co.*, 56 N.J. 111, 117, 265 A.2d 382 (1970). The leading case of *Leonard v. Leonia Heights Land Co.*, 81 N.J.Eq. 489, 87 A. 645, (1913) confirms this position and demonstrates that N.J.S.A. 46:22–1 does not affect the result.

In *Leonard* the complainant sought to foreclose a mortgage assigned to her in 1904. The assignment was not recorded until 1910. Between 1904 and 1910 the affected premises were the subject of various deeds and mortgages, all of which were recorded. The Vice Chancellor who heard the case ruled against the complainant on two grounds: i) by virtue of Section 54 of the Conveyance Act (the predecessor of N.J.S.A. 46:22–1) failure to record the assignment rendered it void; ii) since the assignment to complainant was not recorded, the assignor appeared on the face of the record to be both the owner of the mortgage and at the same time the owner of the equity of redemption, permitting those challenging complainant to assume that the assignor's estate as mortgagee merged in his ownership of the fee.

The Court of Error and Appeals reversed. It construed section 54 in the context of prior statutes and in relation to other controlling statutory provisions. It concluded that the provisions voiding certain unrecorded instruments did not apply to unrecorded assignments of mortgages; nor did it apply to unrecorded discharges of mortgages:

> Assignments of mortgage are not specifically mentioned by name in section 54. If included at all, it must be because they are among the deeds or instruments mentioned specifically in section 21. Other deeds and instruments are mentioned in that section to which section 54 is as inapplicable as it is to assignments of mortgage. Among them are discharges and releases of mortgage and chattel mortgages. Discharges and releases could never be adverse to or have effect against subsequent judgment creditors, purchasers, or mortgagees but would always be to their advantage by getting out of their way antecedent liens, but if we disregard, as we ought, the words 'as against' and read them 'as to' (their proper meaning here), we then have the statute making discharges and releases void as to subsequent judgment creditors, purchasers, and mortgagees; that is to say, the prior liens which have been discharged or released will be restored by the failure to record the discharge or release, or, in other words, a discharge or release, unlike other deeds, must be recorded as well as delivered in order to become effective. This seems a sufficient reduction ad absurdum and demonstrates that the words of section 54 are not to be taken literally.

81 N.J.Eq. at 495, 87 A. 645.

The circumstances of the assignment to Bishop effectively eliminate any latent equities that Bishop might claim and, further, suggest that Bishop was aware of facts that put it on a duty of inquiry about the Discharge. The Receiver now asserts that "[n]either Bishop nor the receiver, nor Mr. or Mrs. Hildebrandt had any knowledge of the existence or contents of the Discharge prior to February 24, 1999" (Brief in Support of Plaintiff's Motion for Summary Judgment at 6). While the statement may be literally true, it is far from the whole truth disclosed by the undisputed facts.

At the July 10, 1990, closing of the Concorde loan it was necessary that the Hildebrandts ensure that Concorde's mortgage be a first lien on the Property. The Hildebrandts' attorney, Marguerite M. Shaffer, Esq., prepared the Discharge and arranged for Doris to sign it. On the basis of the Discharge Shaffer certified to Concorde that it held a first lien on the Prop-

erty and the Hildebrandts signed an affidavit of title stating, in part: "No other persons have legal rights in this property. There are no... other legal obligations which may be enforced against this property." That affidavit was true only if the Doris Mortgage had been effectively discharged.

A year later Bishop loaned $175,000 to DM, in which the Hildebrandts held an interest. Bishop sought a first lien on the Property. The status of the Doris Mortgage became important. Mr. Hildebrandt had a conversation with Bishop's attorney, Alphonso Crescenzo, Esq., in which Hildebrandt informed the attorney: "I had a conversation with my mother when I was asking her if she would be willing to assign what I thought was her position in the house, and she said, that's fine with me, but *I don't think I have a mortgage on the house. I think I signed something about that.*" (underscoring added).

By letter dated May 31, 1991, Crescenzo reported the uncertain status of the Doris Mortgage to Bishop's president Charles Irish:

> Several days ago Bill call me concerning the assignment of the mortgage held by his mother on his other shore property. She appeared to be somewhat confused but is of the belief that she released her mortgage. Bill was unsure. I am conducting a search. If the mortgage was released, Bill and his wife will give us a mortgage and if it was not released, we will continue with obtaining the assignment of the mortgage held by his mother.

Despite the assurance in his letter, Crescenzo did not conduct a search of the Property. He simply ascertained that the Doris Mortgage was still open of record. Had he conducted a search he would have discovered the conflict between Concorde's reported first lien position and the existence of the prior Doris Mortgage. Concorde could not have had a priority position unless the Doris Mortgage had been removed. Nor did Bishop pursue the mat-ter further with Doris (who did not think she had a mortgage on the house), with the Hildebrandts or with Concorde. It simply took a chance and accepted an assignment of a discharged mortgage. No equities, latent or otherwise, arise from these circumstances.

C. *Defendants' Other Contentions:* Defendants have advanced a number of other grounds in support of their motion for summary judgment and in opposition to the Receiver's motion. Certain of these grounds arise out of the July 1993 restructuring of the Bishop loan to DM. Pursuant to a Restructuring Agreement and a Put Agreement, the original indebtedness of $175,000 was reduced to $122,500. Without mentioning the Assignment of the Doris Mortgage, the Restructuring Agreement and the Put Agreement set forth a series of security and guaranty arrangements.

Defendants contend that there was an abandonment of the Assignment and a novation. Further, they contend that when Doris assigned her mortgage to Bishop for the benefit of the Hildebrandts, there was a merger, because all interests in the Property rested in the Hildebrandts.

In view of the determination that the Discharge is valid and enforceable against the Receiver, it is unnecessary to resolve defendants' other contentions.

### Conclusion

For the reasons set forth above the Receiver's motion for summary judgment is denied, and defendants' motion for summary judgment is granted. The Receiver's complaint will be dismissed. By reason of the dismissal of the Receiver's complaint the third, fourth and fifth party complaints are rendered moot and will be dismissed. An order implementing this opinion will be entered.