CHARLES A. STEADMAN et al., executors, &c., complainants-respondents,

*v.*

FRANK J. and CLARA F. FOSTER, defendants-appellants.

[Argued June 22d, 1914.   Decided November 16th, 1914.]

1. The record of an assignment of mortgage of real estate is constructive notice to the mortgagor of such assignment.

2. The habitual payment of interest on a mortgage to a person other than the mortgagee, who in turn paid it to the mortgagee, will not authorize the payment of principal of such mortgage to such other person.

3. The execution by the mortgagee of a release of part of the mortgaged premises after the making of such unauthorized payment, does not amount to a ratification of its receipt when it does not appear that the mortgagee received any of the money or knew of the payment.

4. The making of the payments having come to the knowledge of the mortgagee after the death of the person that received them, and a dispute having arisen between mortgagor and mortgagee as to which should make claim against the estate, and the mortgagor finally refusing so to do,—*Held*, that the action of the mortgagee in filing a claim to save its total loss to all parties amounted neither to an estoppel of the mortgagee to claim the full amount of the mortgage nor to a ratification of the act of the deceased in receiving the money.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery.

*Mr. Frederick J. Greenberg* and *Messrs. Osborne & Astley,* for the appellants.

*Messrs. Lehlbach & Van Duyne,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

This is a suit for foreclosure of a mortgage, and the question for decision is whether two payments of $500 each, made by de-

fendants to Charles A. Feick, now deceased, should be credited on the principal of the mortgage. The vice-chancellor ruled that the complainants were not required to give credit for them, and the defendants appeal.

The mortgage was made originally to Feick, who, about three months later, and before any interest was due thereon, assigned it to Mary E. Steadman, complainants' testatrix, the assignment being promptly recorded and the bond and mortgage turned over to Mrs. Steadman, who retained possession of them until her death. Feick, however, habitually collected the semi-annual interest, defendant Frank J. Foster paying it in at his office and taking a receipt signed by a clerk, presumably in Feick's name. This interest was regularly remitted to Feick and received by complainants' testatrix without objection to his action, and the vice-chancellor properly held that by thus receiving it she assented to Feick acting as her agent for the collection of interest.

The two payments, intended to be on account of principal, were made at Feick's office, but without Mrs. Steadman's knowledge, and were never transmitted by him, he accepting interest from Foster as on a reduced principal, and remitting to Mrs. Steadman full interest on the original principal. These facts developed after Feick's death. Mrs. Steadman, so far as appears, never authorized Feick to receive payments of principal, and from the fact that Feick paid her interest in full, it is apparent that she did not know of any such payments. According to Foster's testimony they were made in this way: About August 1st, 1910, Foster contemplated the sale of part of the mortgaged premises, so he went to Feick's office and asked for a release of this part, and was told he would have to make a payment on account of principal, and accordingly paid $500. He did not get his release then, but was told that "Mrs. Steadman was away." A year later, in July, 1911, he asked for the release, and was required to pay $500 more, which he did, and, later, received through Feick's office the release, dated August 1st, 1911, but not acknowledged until September 27th, 1911. It appears from the testimony of a former clerk in Feick's office that he, the said clerk, arranged with Mrs. Steadman to execute the release, assuring her that the security of the mortgage would

not be impaired thereby, and without informing her of the two $500 payments that had been made to Feick.

It was claimed at the hearing that the payments should be credited on the mortgage because the Fosters did not know of the assignment. But the vice-chancellor properly held that they were bound to know of it. *Leonard* v. *Leonia Heights Land Co., 81 N. J. Eq. 489.* Moreover, it is reasonably plain that Foster must have had actual notice of it when told, as he testifies, that the release could not be given him "because Mrs. Steadman was away."

It was further claimed that the evidence showed that Feick was authorized to receive payments of principal as Mrs. Steadman's agent; but this claim cannot be supported. The practice of permitting attorneys-at-law to receive and give acquittances for interest payments is common; but the habitual payment of interest to an attorney-at-law who in turn remits it to the mortgagee, does not establish his authority to receive the principal or any part thereof, especially when he has not the custody of the papers. *27 Cyc. 1389; Cox* v. *Cutter, 28 N. J. Eq. 13.* Nor does it amount to a holding out of the attorney as agent so as to create any estoppel against the mortgagee. *Lawson* v. *Nicholson, 52 N. J. Eq. 821.*

The further point is made that Mrs. Steadman ratified Feick's receipt of the principal payments by executing the release. But this is obviously without substance, for, as already observed, she knew nothing of the payments and released (for a stated consideration of one dollar) purely on the representation that her security for the entire principal would not be impaired.

Finally, it is urged that she either ratified the receipt of this money by Feick or is estopped as against the Fosters from denying his agency, because she presented a formal sworn claim for the amount to the Feick estate after his death.

The evidence showed that both Mrs. Steadman and the Fosters were represented by the same attorney so far as the Feick estate was concerned; that he made up first a joint or alternative claim, consisting of the affidavit of Foster that he paid in the money and the affidavit of Mrs. Steadman that it was received without her authority; that the attorney was notified by the

executor of Feick that this could not be recognized as a claim, and so he prepared and presented several similar documents, all of which were overruled, and, finally, after many disputes between Mrs. Steadman and the Fosters as to which should be the moving party in making a claim against the estate, he prepared and presented at the last moment a claim in the name of Mrs. Steadman in order to avoid, as he put it in his testimony, "making a gift to the estate."

From what has been said, it is plain that the claim should have been put in by the Fosters, who had every opportunity of doing so, and refused. It does not savor of equity for them now to say that because she did what they should have done, she should lose her right of recovery against them. Certainly, there is no estoppel; for the Fosters were not led to change their position by any act of Mrs. Steadman. Nor is there any ratification; for, as the vice-chancellor observed, Mrs. Steadman would have the right to resort to the Feick estate for any deficiency on the foreclosure sale, not exceeding the amount paid by Foster, but to lay the foundation for this must file a claim within the time allowed by law. The vice-chancellor fairly solved the difficulty by inserting in the decree a provision that upon collection of the amount of the decree the complainants should assign to the Fosters the claim against the estate of Feick. This does full equity to all the parties. The decree of the court of chancery is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, WILLIAMS—12.

*For reversal*—None.