946 A.2d 578 (2008)
400 N.J. Super. 126
EMC MORTGAGE CORPORATION, Plaintiff-Appellant
v.
Ishaque CHAUDHRI and Claudia Chaudhri; *579 Shazia Chaudhri-Dewit[1]; and Gateway Funding Diversified Mortgage Services, L.P., Defendants-Respondents, and
Dan Ballantine Well Drilling, Inc.; Allied Building Products Corp.; Federal Deposit Insurance Corporation, as Receiver for Resolution Trust Corporation, in its Capacity as Conservator of State Savings, FSB, Chester Partnership; The National Bank of Sussex County; Bank of Baroda; Mary Kabasakalian; J. Clark Geddis, Esquire; The Orthopedic Group; Wachovia National Bank of Delaware, N.A., f/k/a First Union National Bank of Delaware f/k/a First Union Bank of Delaware, f/k/a Corestates Bank of Delaware, N.A., Michael Earl; Signe Pallosen Einar Halvorsen and Oslo Halvorsen (Valle); and Michael Kolody, Defendants.
No. A-5261-06T2.
Superior Court of New Jersey, Appellate Division.
Submitted January 16, 2008.
Decided April 21, 2008.
*581 Udren Law Offices, P.C., Cherry Hill, for appellant (Heidi R. Spivak, on the brief).
Hunt, Hamlin & Ridley, Newark, for respondents Ishaque and Claudia Chaudhri (Raymond L. Hamlin, of counsel and on the brief).
Law Office of Bhavini Tara Shah, L.L.C., Edison, for respondent Shazia Chaudhri-DeWit (Bhavini Tara Shah, on the brief).
Sanchez, Sanchez & Santoliquido, Elizabeth, and Hartlaub, Dotten & Terry, P.C., Summit, for respondent Gateway Funding Diversified Mortgage Services, L.P. (Carolyn Gilinsky, on the brief).
Before Judges LISA, LIHOTZ and SIMONELLI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
We reverse the dismissal of plaintiff's foreclosure complaint. We conclude the motion judge erred in interpreting the notice requirements of the Fair Foreclosure Act (FFA), N.J.S.A. 2A:50-53 to -68, and incorrectly imposed an obligation on plaintiff to provide actual notice of the recorded assignment of mortgage to the mortgagors prior to initiating foreclosure. We also determine that sufficient factual disputes are present, making entry of summary judgment improper.

I
Defendants Ishaque and Claudia Chaudhri (the Chaudhris) purchased a home in Chester Township (the property). On March 6, 1998, the Chaudhris executed a mortgage note and a purchase money mortgage to secure payment of $168,000, borrowed from Security Atlantic Mortgage Co., Inc. (Security). The mortgage was recorded in the county recording office on April 20, 1998. On May 20, 1998, Security assigned its interest to Unicor Mortgage, Inc. (Unicor). The assignment agreement was recorded. The Chaudhris defaulted on the mortgage obligation, and on October 28, 1999, Unicor commenced foreclosure under docket number F-17629-99.
Unicor then sought protection under the Bankruptcy Code. Plaintiff EMC Mortgage Corporation (EMC) purchased the Chaudhris' mortgage at a bankruptcy sale. EMC received an assignment of the mortgage and proceeded on Unicor's behalf to prosecute the foreclosure action.
On September 11, 2002, after presentation of proofs at trial, the Chancery Division judge (the trial judge) dismissed Unicor's complaint, without prejudice, citing three reasons. First, Unicor failed to properly comply with the notice provisions of the FFA. Second, Unicor did not present evidence of the recorded assignment *582 agreement to EMC. Third, Unicor failed to prove that notice of the assignment to EMC was given to the Chaudhris. Thereafter, on October 8, 2002, EMC recorded the assignment of the Security mortgage it had received from Unicor.
After dismissal of Unicor's complaint, the Chaudhris filed a motion to discharge Unicor's lis pendens and mortgage. Counsel's certification of service stated that the motion was filed with the Clerk's office and mailed to "Christopher Fox, Esq., located at East Cooper Avenue, Moorestown, New Jersey." We note that the pleadings reveal Mr. Fox was designated trial co-counsel in the Unicor foreclosure and was associated with the law firm of Mark J. Udren & Associates of Cherry Hill.[2]
On October 25, 2002, after review of the unopposed motion, the trial judge ordered:
(1) That the Lis Pendens[,] which was filed on the property located at 43 Pleasant Hill Road, in the Township of Chester, also known as Block 40, Lot 9, which was received and filed on November 17, 1999, and the Mortgage[,] which was duly recorded in Book 7563, Page 209 & c, of the Morris County Register's Book of Mortgages by Security Atlantic Company are hereby discharged; and
(2) That title to the property be quieted in defendants and their successors and against any and all persons claiming under plaintiffs; and
(3) A copy of this Order be served upon counsel of record.
On October 28, 2002, the Chaudhris recorded the October 25, 2002 order with the county Register of Deeds. The record does not state whether EMC was sent a copy of the filed order.
On December 4, 2002, EMC filed a foreclosure complaint, in its own name, under docket number F-21886-02. EMC also filed and recorded a lis pendens on December 31, 2002.
On January 15, 2003, the Chaudhris sold the property to their daughter, defendant Shazia Chaudhri-DeWit, for stated consideration of $170,000. The deed was recorded on February 13, 2003. On that same date, DeWit borrowed $136,000, executed a note, and granted a purchase money mortgage on the property to defendant Gateway Funding Diversified Mortgage Services, L.P. (Gateway).
EMC discovered the October 25, 2002 order, which discharged its mortgage and filed an emergent application to vacate the order and for other relief. On February 24, 2003, the trial judge vacated the October 25, 2002 order stating: "Through inadvertence by the court the order entered on October 25, 2002 did not reflect accurately the decision of the court and must be vacated." The Chaudhris' 2002 motion, along with newly filed motions, were listed for oral argument.
On March 12, 2003, the trial judge entered disposition on all pending applications. The court considered the Chaudhris' motion to discharge the Unicor mortgage and to quiet title, which originally had been filed in 2002. The motion was denied and the court ordered the prior order of October 25, 2002, "STRICKEN OF RECORD." The trial judge further ordered deleted the "handwritten notation" *583 placed on the recorded mortgage discharging it by court order. The trial judge stated: "In dismissing the complaint . . . the court was not adjudicating that the mortgage lien was invalid, nor that the Note and Mortgage were unenforceable against [d]efendants." Finally, the court restored and reinstated the Security mortgage as "a valid first lien" on the property.
A second order, also entered on March 12, 2003, addressed the Chaudhris' motion to dismiss EMC's foreclosure action, asserting application of res judicata and collateral estoppel. We note the Chaudhris' did not reveal they had sold the property to DeWit. The court also denied this motion stating: "Dismissal of the Unicor . . . foreclosure action against these defendants because of procedural defects and deficiencies does not at law or in equity preclude a subsequent action on the note and mortgage by a different party for a later default."
Based on the record, we conclude EMC was unaware of the sale to DeWit and Gateway's mortgage, recorded in February 2003. Gateway did not receive notice of or participate in these proceedings.
On September 19, 2003, EMC amended its foreclosure complaint to add Gateway and DeWit. Gateway filed a contesting answer asserting its lien was primary to any debt due EMC. Also, Gateway filed cross-claims against the Chaudhris and DeWit to recoup damages if its mortgage was not deemed the first lien on the property. Gateway also filed a counterclaim against EMC to declare EMC's lien was inferior to Gateway's.
Final disposition of the foreclosure matter was delayed because Ishaque Chaudhri filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. § 701. When EMC secured an order to vacate the automatic stay, 11 U.S.C.A. § 362(d), from the Bankruptcy Court, it resumed the foreclosure action.
Motions for summary judgment were filed by the Chaudhris, DeWit and Gateway. A different judge (the motion judge) was assigned to the matter following the trial judge's retirement. On April 27, 2007, the motion judge entered three separate orders granting each defendant's request for summary judgment. The motion judge ordered that Gateway, and its successors or assigns, were not bound by the February 24, 2003 and March 12, 2003 orders, and concluded that Gateway's mortgage had priority over EMC's. The motion judge issued the following findings and conclusions:
[I] find that the lender . . . EMC, has not cured the procedural deficiencies as it relates to proceeding on this foreclosure action by most specifically not providing proof of notice of the assignment to these defendants.
[T]hat was the specific problem[] with the initial foreclosure action. . . . Failure to provide notice of proof, notice of the intention to foreclose, and failure to provide proof of notice of the assignment.
. . . .
[I] will find[] the notice of the intent to foreclose in October of 2002 was mailed by . . . regular mail not returned, [and] certified mail unclaimed. Under the unique circumstances of this case where the lender, EMC, knew very well that the specific issue of notice of the intent to foreclose and notice of the assignment were so important in the dismissed action, I find that more than just certified mail as usually allowed would have to be shown here.
The lender, EMC, knew that there was an attorney; I don't have any proof that even the attorney was advised. Personal service, although not required *584 in the ordinary notice of intent to foreclose, would certainly be expected in this instance and/or process service, and particularly the notice of assignment. Not providing notice of that assignment as recorded to counsel and/or to the Chaudhris, I find to be a distinct, procedural deficiency that permits this Court to grant summary judgment to the Chaudhris, at this point with prejudice, the second opportunity to correct those procedural deficiencies under the unique circumstances of this case [sic].
I also note that this lender, EMC, did not itself check the status of this property between December of '02 and January 30th of '03. . . .
So in that sense the lender itself is not acting in a way that protects its very own interest from September of '02 until I believe the check that an affidavit that sent the document here, it indicated an inquiry as to status in January of '03. So the lender itself is not protecting its own interest and its own property.
. . . .
The lender had not moved under the note, . . . even after the dismissal of the initial action . . . to which they had the right to do, and they still had the right even though the declaration of bankruptcy to collect this money pursuant to a note.
. . . .
[I] also find that Gateway certainly had reason to rely upon the Court ordered discharge at the time that it provided the mortgage to [DeWit], that it is entitled to act as a first lien[,] and is entitled to otherwise rely upon that discharge that it saw at the time. Although there is a gap certainly between December of '02 and January of '03, I'm satisfied that it had a reason to rely upon that Court ordered discharge.
And I note as well a lack of notice. EMC went before [the court] in 2003 seeking to vacate that discharge, not giving notice or having notice or checking the notice as it related to Gateway. . . .
. . . .
This is a very unique circumstance, and again, I'm imposing upon this lender obligations that relate to the very unique circumstances of this case, particularly in view of the trial that was conducted in September of 2003.
In the same way, I'm satisfied that [DeWit] had the right to proceed and be dismissed from this case. Again, I don't know . . . the reason why she's brought in. . . .
On appeal, EMC maintains the motion judge erred in granting summary judgment because genuine issues of material fact required disposition at trial. Further, EMC argues the motion judge erred by imposing procedural provisions not required by the FFA to foreclose its mortgage.

II
Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "A party may defeat a motion for summary judgment by demonstrating that the evidential materials relied upon by the moving party, considered in light of the applicable burden of proof, raise sufficient credibility issues `to permit a rational factfinder to resolve the alleged disputed issued in favor of the non-moving party.'" D'Amato v. D'Amato, 305 N.J.Super. 109, 114, 701 A.2d 970 (App.Div.1997) (quoting Brill v. *585 Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995)).
The trial court's "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill, supra, 142 N.J. at 540, 666 A.2d 146 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)). The trial judge must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. When the facts present "a single, unavoidable resolution" and the evidence "is so one-sided that one party must prevail as a matter of law," then a trial court should grant summary judgment. Ibid.
We apply the same standard of review that governs trial courts when reviewing summary judgment orders. Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46, 916 A.2d 440 (2007). If there is no genuine issue of fact, we then must decide whether the lower court's ruling on the law was correct. Id. at 446, 916 A.2d 440. In reviewing a trial court's determination on a question of law, we are to consider the matter de novo, with no deference to the trial court's views. See Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
In this matter, we note that the arguments raised on appeal, as well as the analysis applicable to reach disposition of those issues, vary among the three defendants. Therefore, organizational needs dictate that we separately address the challenges pertinent to each defendant.

III
The motion judge granted summary judgment to the Chaudhris, after determining EMC provided unsatisfactory notice under the FFA prior to commencing foreclosure, and failed to deliver a copy of the recorded assignment received from Unicor.
"[T]he [FFA] was designed to make clear the rights and remedies of both borrowers and lenders prior to and throughout the foreclosure process. The [FFA's] ultimate goal is to allow mortgage lenders their remedies while giving borrowers `every opportunity' to pay their mortgages and keep their homes." Wells Fargo Home Mortgage, Inc. v. Stull, 378 N.J.Super. 449, 456, 876 A.2d 298 (App.Div.2005) (quoting N.J.S.A. 2A:50-54) (footnotes omitted).
Under the FFA, a residential mortgage lender must serve a notice of intention to file foreclosure proceedings, "by registered or certified mail, return receipt requested" prior to commencing suit. N.J.S.A. 2A:50-56(a) and (b). By enacting this provision, the Legislature mandated that lenders must first serve the notice to allow homeowners "every opportunity to pay their home mortgages, and thus keep their homes; and that lenders will be benefited when residential mortgage debtors cure their defaults and return defaulted residential mortgage loans to performing status." N.J.S.A. 2A:50-54.
Because the issuance of the FFA notice was pivotal to the motion judge's determination, it is prudent to recite the statutory requirements of the notice provision. The lender's notice of intent to foreclose must comply with the following:
The written notice shall clearly and conspicuously state in a manner calculated to make the debtor aware of the situation:

*586 (1) the particular obligation or real estate security interest;
(2) the nature of the default claimed;
(3) the right of the debtor to cure the default as provided in section 5 of this act;
(4) what performance, including what sum of money, if any, and interest, shall be tendered to cure the default as of the date specified under paragraph (5) of this subsection c.;
(5) the date by which the debtor shall cure the default to avoid initiation of foreclosure proceedings, which date shall not be less than 30 days after the date the notice is effective, and the name and address and phone number of a person to whom the payment or tender shall be made;
(6) that if the debtor does not cure the default by the date specified under paragraph (5) of this subsection c., the lender may take steps to terminate the debtor's ownership in the property by commencing a foreclosure suit in a court of competent jurisdiction;
(7) that if the lender takes the steps indicated pursuant to paragraph (6) of this subsection c., a debtor shall still have the right to cure the default pursuant to section 5 of this act, but that the debtor shall be responsible for the lender's court costs and attorneys' fees in an amount not to exceed that amount permitted pursuant to the Rules Governing the Courts of the State of New Jersey;
(8) the right, if any, of the debtor to transfer the real estate to another person subject to the security interest and that the transferee may have the right to cure the default as provided in this act, subject to the mortgage documents;
(9) that the debtor is advised to seek counsel from an attorney of the debtor's own choosing concerning the debtor's residential mortgage default situation, and that, if the debtor is unable to obtain an attorney, the debtor may communicate with the New Jersey Bar Association or Lawyer Referral Service in the county in which the residential property securing the mortgage loan is located; and that, if the debtor is unable to afford an attorney, the debtor may communicate with the Legal Services Office in the county in which the property is located;
(10) the possible availability of financial assistance for curing a default from programs operated by the State or federal government or nonprofit organizations, if any, as identified by the Commissioner of Banking and Insurance. This requirement shall be satisfied by attaching a list of such programs promulgated by the commissioner; and
(11) the name and address of the lender and the telephone number of a representative of the lender whom the debtor may contact if the debtor disagrees with the lender's assertion that a default has occurred or the correctness of the mortgage lender's calculation of the amount required to cure the default.
[N.J.S.A. 2A:50-56(c).]
The FFA does not state the resultant consequences if a lender fails to comply and few published opinions interpret the provisions of the FFA. In Cho Hung Bank v. Kim, 361 N.J.Super. 331, 343, 825 A.2d 566 (App.Div.2003), we commented that a lender's "substantial compliance" with the contents of a notice of intent, sent by a lender prior to initiation of foreclosure, pursuant to N.J.S.A. 2A:50-56(c), was not authorized by the statute's terms.
Also, in GE Capital Mortgage Servs., Inc. v. Weisman, 339 N.J.Super. 590, 592, 773 A.2d 122 (Ch.Div.2000), a Chancery Division judge examined the borrower's challenge to the lender's policy *587 of mailing the statutory notice solely by first class mail. Ibid. The judge noted the dearth of New Jersey authority and reviewed judicial interpretations of a similar statute adopted by Pennsylvania, 41 Pa. Cons.Stat. Ann. § 101 to § 605 (2007). Id. at 592-94, 773 A.2d 122. The judge concluded the lender's inability to locate its records demonstrating service did not require the dismissal of the foreclosure complaint, id. at 592, 773 A.2d 122, and permitted the lender to cure the technical deficiency without prejudice to the borrowers' rights. Id. at 594, 773 A.2d 122.
We note that in GE Capital, supra, the lender claimed compliance with the FAA notice requirements, but it was unable to produce proof. 339 N.J.Super. at 595, 773 A.2d 122. If a lender solely employs first class mail, no presumption of receipt arises when the notice is sent. Hammond v. Paterson, 145 N.J.Super. 452, 455, 368 A.2d 373 (App.Div.1976). "The very reason for providing for certified mail or actual receipt is to avoid such a presumption." Ibid.
We disapprove of the remedy employed in that case, and reinforce the statutory mandate that lenders send proper notice, by registered or certified mail, at least thirty days prior to the initiation of a foreclosure action. N.J.S.A. 2A:50-56(a). The Legislature specifically intended that lenders faithfully comply with the FFA provisions and articulated that "[w]aivers by the debtor of rights provided pursuant to [the FFA] are against public policy, unlawful, and void, unless given after default pursuant to a workout agreement in a separate written document signed by the debtor." N.J.S.A. 2A:50-61. Accordingly, courts are not free to deviate from the unambiguous statute. Cho Hung Bank, supra, 361 N.J.Super. at 343, 825 A.2d 566.
This discussion serves as a prelude to the examination of the facts and issues at hand. We concur with the trial judge's dismissal, without prejudice, of Unicor's foreclosure complaint due to the failure to send the notice of intent to foreclose prior to commencing suit. As we noted, the notice provisions are mandatory.
In EMC's action, the motion judge found the FFA notice was sent by first class and certified mail, return receipt requested, prior to filing the foreclosure complaint. Contrary to the Chaudhris' contentions, EMC pled these facts at paragraph 11 of its foreclosure complaint. Nevertheless, the motion judge concluded the methods employed by EMC for service of the FFA notice were insufficient because "[u]nder the unique circumstances of this case . . . more than just certified mail as usually allowed would have to be shown. . . . Personal service, although not required in the ordinary notice of intent to foreclose, would certainly be expected in this instance." We disagree with this conclusion as no legal or equitable authority supports such a proposition.
First, no provision of the FFA delineates circumstances warranting the imposition of an enhanced notice requirement. EMC not only complied as directed by the statute, it additionally followed the provisions of Rule 4:4-7 by also sending the notice by first class mail. EMC presented proof of the unclaimed certified mail notice sent to the Chaudhris and that the first class mail was not returned. The simultaneous use of certified mail and first class mail satisfies the statutory requirements of N.J.S.A. 2A:50-56. Nothing more is required.
The Chaudhris' contention that "notice" was not effectuated because they did not retrieve the certified mail is specious. The Chaudhris' failure to claim the certified mail, despite notices issued by the Postal Service to do so, will not defeat statutory *588 compliance. We will not sanction a mortgagor's deliberate attempt to frustrate the mortgagee's efforts by ignoring the properly sent notice of intent.
Second, contrary to the motion judge's suggestion, the dismissal of Unicor's foreclosure, due to procedural deficiencies, in no way amplifies the specific statutory notice requirements. Moreover, a dismissal of a foreclosure action, without prejudice, has no effect on the underlying contractual obligations of the parties and "does not bar reinstitution of the same claims in a later action." Woodward-Clyde Consultants v. Chemical & Pollution Scis., Inc., 105 N.J. 464, 472, 523 A.2d 131 (1987); R. 4:37-2(a). We conclude the motion judge erred in granting summary judgment to the Chaudhris because of a perceived noncompliance with N.J.S.A. 2A:50-56. The evidence of record proves otherwise.
As further justification to dismiss the foreclosure complaint, the motion judge identified EMC's failure to provide proof of service of its recorded assignment from Unicor. The motion judge expressly stated that because EMC was aware of this "procedural deficiency," identified in the September 11, 2002 order of dismissal, the continued failure to serve the assignment was "a distinct, procedural deficiency that permits this Court to grant summary judgment to the Chaudhris, at this point with prejudice." We disagree.
A mortgage assignment must be in writing and "any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name." N.J.S.A. 46:9-9; Byram Holding Co. v. Bogren, 2 N.J.Super. 331, 336, 63 A.2d 822 (Ch.Div.1949). Instruments affecting title to real estate, which include assignments of mortgages, may be recorded in the county recording office. N.J.S.A. 46:16-1(d). Mortgage assignments are also specifically recordable pursuant to N.J.S.A. 46:18-3. It is important to note that "[t]he fact that assignments of mortgages may be recorded does not affect the validity of an assignment of a mortgage which has not been recorded." In re Kennedy Mortgage Co., 17 B.R. 957, 964 (Bankr.D.N.J.1982); First Nat'l Bank v. Larson, 17 B.R. 957, 965 (Bankr.D.N.J.1982); Clift v. Scheutz, 83 N.J.Eq. 442, 444, 91 A. 815 (Ch.1914).
In this case it is unrefuted that the assignment from Unicor to EMC was duly recorded on October 8, 2002. Also, there is no challenge made to the terms of the mortgage at paragraph 19, which provides that "the Note . . . (together with this Security Instrument) may be sold one or more times without prior notice to the Borrower." The Chaudhris advance no claim of harm suffered from the alleged failure to actually receive a copy of EMC's mortgage assignment.[3] Their grievance merely is that they were not served with a copy of the assignment.
The suggestion that New Jersey law places "a requirement of notice of the assignment to the obligor[,]" is incorrect as a matter of law. When an assignment is duly recorded, it shall "be notice to all persons concerned that [the] mortgage is so assigned." N.J.S.A. 46:18-4 (emphasis added). Mortgagors are "persons concerned" under the statute. Thus, current New Jersey law provides that the recordation of the mortgage assignment alone serves as notice to third parties of its *589 existence.[4]Rose v. Rein, 116 N.J.Eq. 70, 74, 172 A. 510 (E. & A.1934); Leonard v. Leonia Heights Land Co., 81 N.J.Eq. 489, 492, 87 A. 645 (E. & A.1913); Dotto v. Ciamboli, 8 N.J.Misc. 37, 38, 148 A. 197 (Ch.1929), aff'd o.b., 107 N.J.Eq. 596, 154 A. 631 (E. & A.1931); Shaw v. Hughan, 109 N.J.Eq. 317, 318, 157 A. 126 (Ch.1931); Mott v. German Hosp., 55 N.J.Eq. 722, 740, 37 A. 757 (Ch. 1897); see Weinstein, 29 N.J. Practice § 11.3 (2001); see also, Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 111, 892 A.2d 646 (2006) (recordation of Homeowner's Association bylaws can serve as notice to subsequent judgment creditors and purchasers).
Our review discovers no statutory or equitable requirement that a notice of a mortgage assignment and its underlying note must be served upon the mortgagors. Specifically, the FFA contains no such requirement. Further, N.J.S.A. 46:22-1, which is advanced as authority to void EMC's mortgage claim, does not apply to mortgage assignments. United States v. Goldberg, 362 F.2d 575, 577 (3d Cir.1966), cert. denied, 386 U.S. 919, 87 S.Ct. 881, 17 L.Ed.2d 790 (1967). This section of the Recording Act, N.J.S.A. 46:15-1.1 to 46:26-1, provides, in part, that failure to record "a deed or instrument of the nature or description set forth in section [N.J.S.A.] 46:16-1" shall, be "void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice[.]" N.J.S.A. 46:22-1.[5] Assignments of mortgages do not fall within the purview of that statute.
A notice requirement does exist when the servicing of a mortgage is sold, assigned or transferred. The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2601 to -17, imposes an obligation upon a servicer of any federally related mortgage loan to deliver to the borrower a written notice of any assignment, sale, or transfer of the servicing of the loan to any other person or entity, which will be servicing a loan. 12 U.S.C.A. § 2605(b); see RESPA, 24 C.F.R. § 3500.21(d) (2008). The loan servicer and the assignee of the mortgage are not necessarily one and the same. Different entities may service a loan owned by another. Oftentimes, mortgages are assigned and the loan servicer does not change.
As the law now stands, recording the assignment is all that is required to provide notice of its existence. Steadman v. Foster, 83 N.J.Eq. 641, 643, 92 A. 353 (E. & A.1914). Consequently, the failure to advise the Chaudhris of EMC's receipt of the assignment from Unicor was innocuous. See Restatement (Third) of Property: Mortgages, § 5.5 comment a (1997). The motion judge's (and the trial judge's) order to the contrary was error.
In summary, we conclude that: (1) EMC is not required to exceed the notice provisions of N.J.S.A. 2A:50-56, and sending the statutory notice of intent to foreclose by first class and certified mail, return receipt requested, satisfies the statutory prerequisites; (2) EMC is to serve its assignment on the Chaudris prior to pursuing *590 its foreclosure action, as the recorded assignment is notice to all; and (3) the dismissal of Unicor's foreclosure had no substantive effect on the rights and entitlements of EMC or the Chaudhris under the mortgage and note  in essence the parties' claims and defenses remain unchanged by that litigation. Accordingly, we reverse the order of summary judgment in favor of the Chaudhris and reinstate EMC's foreclosure complaint.

IV
Next, we examine the summary judgment granted in favor of DeWit. The motion judge made no factual examination of DeWit's knowledge of her parents' opportunistic actions to take advantage of the trial judge's inadvertence in entering the October 25, 2002 order. It was clear that the Unicor foreclosure was dismissed, without prejudice, and the law unequivocally expresses such a dismissal has no impact on the respective parties' substantive rights. Woodward-Clyde Consultants, supra, 105 N.J. at 472, 523 A.2d 131. Further, the sharp misuse of motion practice to discharge EMC's mortgage cannot be overlooked as it lends factual support for EMC's theory of the case. EMC presented sufficient facts to require a trial to determine whether the Chaudhris engaged in a scheme to convey the property to DeWit, unencumbered by EMC's mortgage, despite not having satisfied that mortgage. EMC must be afforded a trial to develop the extent of DeWit's knowledge of and participation in these events.
DeWit relies on the receipt of a clear title report, after a January 3, 2003 title search, to claim the status of a bona fide purchaser for value. DeWit's receipt of the title report is not determinative of EMC's assertions. The title search revealed EMC's recorded assignment and lis pendens filed prior to DeWit's purchase of her parents' home. EMC disputes DeWit's suggested status as a bona fide purchaser for value based on the familial relationship with the Chaudhris along with the timing of the transaction. A trial will ferret out whether DeWit knew of her parents' purchase money mortgage and whether she knew the Chaudhris failed to pay that mortgage.
DeWit advances an additional argument that EMC's failure to comply with N.J.S.A. 46:22-1 voids the assignment against a bona fide party-in-interest. This argument is rejected. This very question was posed to the Court of Errors and Appeals in Leonard, supra, 81 N.J.Eq. at 490, 87 A. 645. The defendants advanced the position that "the mortgage has become waste paper by reason of the failure to record the assignment, so that while in fact the complainant's title is paramount, in law it is void." Id. at 491, 87 A. 645. In rejecting this contention, the court stated that although section 54 of the Conveyances Act, as revised in 1898, (the predecessor of N.J.S.A. 46:22-1) could be construed broadly to include mortgage assignments, the statute did not defeat section 32 of the Mortgage Act (now N.J.S.A. 46:18-4), "which makes the record of the assignment notice to all persons concerned, and does not limit its effect to judgment creditors, purchasers and mortgagees." Id. at 493, 87 A. 645. See also Goldberg, supra, 362 F.2d at 577 ("it has been held that § 54 of the [Conveyance] Act, the counterpart of [N.J.S.A. 46:22-1], . . . was not applicable to the assignments of mortgages on real property."); Rose, supra, 116 N.J.Eq. at 73-74, 172 A. 510 (§ 54 of the Conveyance Act is not applicable to assignments of mortgage as against subsequent judgment creditors). Despite the passage of time, these precedents remain applicable because the statutes have not changed. United States SBA v. Martignetti, *591 98 F.Supp.2d 587, 592 (D.N.J. 2000); First Nat'l Bank, supra, 17 B.R. at 965.
Because we reverse summary judgment to the Chaudhris, the factual dispute attached to their transfer of the property to DeWit also must be aired. Accordingly, genuine issues as to material facts preclude the entry of summary judgment for DeWit.

V
EMC's priority position vis-á-vis Gateway's claim introduces a different factual dispute. The law provides that a mortgagee for value without notice, actual or constructive, acquires a lien free from all latent equities existing in favor of third persons. Bajek v. Polack, 120 N.J.Eq. 104, 107-09, 184 A. 212 (Ch.1936). "New Jersey is considered a `race-notice' jurisdiction, which means that as between two competing parties the interest of the party who first records the instrument will prevail so long as that party had no actual knowledge of the other party's previously-acquired interest." Cox v. RKA Corp., 164 N.J. 487, 496, 753 A.2d 1112 (2000). A corollary to that rule is that parties are charged with constructive notice of instruments that are properly recorded. Ibid.
The question of whether Gateway was without notice is disputed. Gateway agrees that when searching the property's title it learned of the assignment from Unicor to EMC, as well as EMC's lis pendens, prior to executing its mortgage encumbrance with DeWit. However, Gateway argues it also determined that the underlying mortgage (between Security and the Chaudhris) was discharged by the October 25, 2002 order, and it concluded EMC's recorded assignment and lis pendens became void as a matter of law. We do not agree that the establishment of Gateway's priority is so simply made.
Constructive notice by known circumstances may defeat the mortgagee's asserted priority position. See Henion v. Monahan, 110 N.J. Eq. 361, 363, 160 A. 566 (E. & A.1932). When a mortgagee is faced with extraordinary, suspicious, and unusual facts, which should prompt an inquiry, "it is equivalent to notice of the fact in question." Tantum v. Green, 21 N.J.Eq. 364, 367-70 (E. & A. 1869).
Also, Gateway may have had actual notice. Howard v. Diolosa, 241 N.J.Super. 222, 232, 574 A.2d 995 (App.Div.), certif. denied, 122 N.J. 414, 585 A.2d 409 (1990). On this record, the reasonableness of Gateway's reliance on its title examination, which may be the subject of expert opinion, and the facts surrounding Gateway's knowledge of EMC's recorded mortgage interest remain at issue. We list several questions that require examination. Whether Gateway had an obligation to inquire of the Chaudhris or EMC regarding the satisfaction or existence of the mortgage. Whether the recorded October 25, 2002 order clarified or clouded the title because the lis pendens was recorded by EMC (not Unicor) under a different docket number than the foreclosure action addressed in the October 25, 2002 order. Whether the timing of the recording of these documents (the lis pendens on October 8, 2002, and the court order with a different docket number of October 25, 2002) further adds to the confusion.
Because EMC's foreclosure was dismissed on summary judgment, these particular points were not adequately explored. We conclude that a factual dispute as to the bona fides of Gateway's actions must be resolved at trial. Accordingly, the order granting Gateway summary judgment must also be reversed.

VI
In considering the correctness of the lower court's decision, we bottom our review *592 on the case only as it had unfolded to the point of the motion, and the evidential material submitted on that motion. Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188, 188 A.2d 24 (1963). Based on that review, we conclude that summary judgment was improvidently granted to all defendants. EMC's foreclosure complaint shall be reinstated and a trial on the merits must be scheduled.
Reversed and remanded.
NOTES
[1] We have used the correct spelling of defendant Shazia Chaudhri-DeWit, despite errors in the caption and throughout the record.
[2] Proper service of the Chaudhris' motion was disputed by EMC. Mr. Fox's notice was incompletely addressed and not sent to his law office. Also, EMC's co-counsel, who had appeared in the foreclosure proceeding, Edward A. Dreskin, Esq., was not served. Viewing the facts most favorable to EMC, would lead to the conclusion that the motion to discharge the lis pendens and mortgage were not properly served on counsel or EMC, Unicor's assignee.
[3] The statute preserves "all just set-offs and other defenses against the assignor that would have been allowed in any action brought by the assignor and existing before notice of such assignment." N.J.S.A. 46:9-9.
[4] We recognize the Restatement (Third) of Property: Mortgages, § 5.5 comment c (1997) takes a contrary position. See also Weinstein, 29 N.J. Practice § 11.4 fn. 37 (2001). We reject the Restatement's position as New Jersey has continued to recognize recordation satisfactorily provides constructive notice.
[5] A more detailed discussion on the issues is found below as the argument is more apposite to the asserted claims of Gateway and DeWit.