1 A.3d 857 (2010)
415 N.J. Super. 358
U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, 2006-EQ1, Plaintiff-Respondent,
v.
Mark M. WILLIAMS, Defendant-Appellant, and
Mrs. Mark M. Williams, his wife, and State of New Jersey, Defendants.
Docket No. A-6185-08T2
Superior Court of New Jersey, Appellate Division.
Argued June 8, 2010.
Decided August 25, 2010.
*858 Ronald Kleckley argued the cause for appellant (Love and Long, L.L.P., attorneys; Mr. Kleckley, on the brief).
Vladimir Palma, Mt. Laurel, argued the cause for respondent (Phelan, Hallinan & Schmieg, P.C., attorneys; Mr. Palma and Brian P. Blake, on the brief).
*859 Before Judges PARRILLO, LIHOTZ and ASHRAFI.[1]
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Defendant Mark M. Williams appeals from a Chancery Division order denying his motion to extend the redemption period following sheriff's sale of his property. Defendant asserts he was denied a meaningful opportunity to participate in New Jersey's residential mortgage Foreclosure Mediation Program (FMP) because he was unrepresented and was not assisted by a housing counselor during the mediation session. Additionally, defendant contends plaintiff U.S. Bank National Association breached an oral agreement to vacate the sheriff's sale and dismiss the foreclosure action.
Following consideration of the arguments in light of the record and applicable law, we conclude defendant was afforded the benefits of foreclosure mediation, including the assistance of a housing counselor, as contemplated by the FMP. Unfortunately, defendant was unable to demonstrate an ability to qualify for a mortgage modification or otherwise redeem the property. Consequently, the trial court's denial of his request to extend the right to redeem was not an abuse of discretion, and we affirm.
These are the relevant facts. In April 2002, defendant secured a purchase-money mortgage loan to finance the acquisition of his principal residence, a two-family property in Newark. On May 11, 2006, defendant refinanced the residential debt by executing a thirty-year adjustable rate note in the amount of $246,600. The note was secured by a mortgage on defendant's residence. Defendant applied a portion of the refinance receipts toward the purchase price of a multi-family investment property. To complete this acquisition, defendant borrowed additional funds from the same lender that had arranged the refinance. Both loans were assigned to plaintiff. Defendant defaulted on the residential loan early in 2007.
On May 10, 2007, plaintiff filed a complaint seeking to foreclose defendant's interest in his principal residence. Defendant did not file a responsive pleading and default was entered on August 27, 2007. Plaintiff forwarded to defendant the requisite notice and proposed entry of final judgment. Again, defendant did not respond. On December 24, 2007, the Chancery Division entered a final judgment of foreclosure awarding plaintiff the amount of $262,601, plus attorney's fees of $2,776.01, and ordered the sum be collected through sheriff's sale of defendant's residence. A sheriff's sale was scheduled for April 2, 2008.
Over the following months, the parties attempted to negotiate an arrangement to allow defendant to reinstate the mortgage obligation and avoid the forced sale of his residence. Defendant maintains "[i]n or about March 2008," he entered into a written forbearance agreement with plaintiff's representative, American Servicing Company (American). The agreement is not included in the record, as defendant claims he "requested a copy from the [s]ervicer, [and it] refused to provide [him] with one on the ground that the [s]ervicer was not legally obligated" to do so.
In his certification, filed in support of a motion to supplement the appellate record, *860 defendant asserted the terms of forbearance required him to make six monthly payments of $2,390, at which time plaintiff would renegotiate the terms of the note secured by the mortgage and dismiss the foreclosure action. From March through July 2008, defendant made the first five payments without incident. When he attempted to make the sixth payment in August 2008, American demanded an additional $2,000 for attorney's fees incurred by plaintiff in the foreclosure action, which defendant was unable to pay. The August payment was not accepted by American, although it was later credited to defendant's account when resubmitted in September 2008.
Plaintiff does not concede a forbearance agreement was reached, although it acknowledges the parties attempted to negotiate a workout and that it adjourned the sheriff's sale each month beginning on April 2, 2008, until a final sale date was set for January 6, 2009. Thereafter, defendant exercised his statutory rights, pursuant to N.J.S.A. 2A:17-36, to adjourn the sheriff's sale on two occasions so that it was relisted for January 20, then February 3, 2009.
In an emergent motion filed in the Chancery Division, defendant challenged plaintiff's failure to honor the terms of the alleged forbearance agreement and sought to stay the sheriff's sale pending the parties' participation in the Judiciary's newly implemented FMP. The court granted defendant's motion, ordered the parties to attend mediation and stayed the sale until March 10, 2009. Further, the court "instructed [] defendant on the requirements of the program" and provided him with "a copy of the Foreclosure Mediation Financial Worksheet [(Worksheet)], the Individual Instructions and the New Jersey Foreclosure Mediation pamphlet." Mediation was set for February 26, 2009.
On the date of mediation, defendant's mortgage arrears totaled $52,816.33. Defendant attended the proceeding without the assistance of a housing counselor or an attorney. He appeared without completing the Worksheet or supplying supporting financial documentation. Consequently, plaintiff concluded defendant was unable to show he could afford to satisfy the payments on a modified, lower-interest loan. Mediation concluded without success.
By March 1, 2009, defendant hired a housing counselor and, with her assistance, provided the Worksheet and supporting paperwork to plaintiff. Plaintiff consented to reconsider defendant's request to negotiate a loan modification and adjourned the sheriff's sale to April 7, 2009. Following its review of defendant's financial documentation, plaintiff concluded defendant lacked the ability to afford a loan modification and satisfy the obligation. Defendant submitted additional documentation on April 3, 2009, and plaintiff again adjourned the sheriff's sale to June 2, 2009.
Finally, defendant moved to stay the June 2 sheriff's sale. Plaintiff argued its review of defendant's financial documentation "[a]s of June 2" showed defendant had "a $450 per month shortfall" and, it had "no ability to approve [] a loan modification." The court denied defendant's motion and allowed the sheriff's sale to proceed, where plaintiff purchased the property for $100.
Prior to the expiration of the ten-day redemption period, defendant filed an emergent motion seeking additional time to redeem the property. During a June 9, 2009 hearing on defendant's motion, defendant asserted plaintiff had not reviewed his most recent proposal for a loan modification. In support of his request, Penny Meredith, defendant's housing counselor, testified she contacted plaintiff on the day *861 of the proposed sale and was told defendant's file "was still being reviewed" and "no decision had been made whether or not [defendant] was eligible" for a loan workout. Meredith was also informed "the sale would be postponed until [plaintiff] was able to complete th[at] review, which normally takes 30 to 45 days."
Plaintiff asserted defendant's housing counselor likely spoke to someone in the wrong department, noting cases begin in the loss litigation department and are transferred to negotiators as the sale date approaches such that "[t]here may be a lapse in communication[.]"
The court granted defendant's motion and extended the redemption period until June 26, 2009. After considering defendant's additional submissions, plaintiff again denied his proposal for modification based on "affordability," suggesting defendant could not satisfy the payments on a modified loan.
Defendant filed his fourth and final emergent motion on July 7, 2009, again asking to extend the redemption period. After argument, the court denied the motion, finding no "basis to extend the redemption period . . . [because plaintiff] ha[d] denied your request and [it is] not inclined on these numbers, this record, [and] these documents that you've given them to allow any kind of workout or modification." The court stayed its order to allow defendant to appeal.
Defendant seeks reversal of the Chancery Division order, arguing for the first time on appeal he was denied a meaningful opportunity to participate in the foreclosure mediation process because he was unrepresented by a housing counselor or an attorney and that plaintiff breached a negotiated forbearance agreement. As a result, he maintains the sheriff's sale should be vacated and the foreclosure action dismissed.
Defendant's arguments challenge the discretion exercised by the Chancery judge in denying his request for a further extension of the time to redeem. In our review, we do not second-guess the exercise of sound discretion by the court because we recognize "[j]udicial discretion connotes conscientious judgment, not arbitrary action; it takes into account the law and the particular circumstances of the case before the court." Higgins v. Polk, 14 N.J. 490, 493, 103 A.2d 1 (1954); DeVito v. Sheeran, 165 N.J. 167, 198, 755 A.2d 1147 (2000). Such determinations should not be overturned on appeal unless it can be shown that the "court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492, 734 A.2d 1147 (1999) (internal quotation omitted). However, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
We also note that we decline to consider "questions or issues not properly presented to the trial court . . . `unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J.Super. 542, 548, 156 A.2d 737 (App.Div.1959), certif. denied, 31 N.J. 554, 158 A.2d 453 (1960)).
Following our review, we are not persuaded that defendant's second point raised on appeal, arguing the sheriff's sale must be vacated and the foreclosure action dismissed because plaintiff breach a contract and/or an oral promise to forbear, was raised before the Chancery Division. *862 This record is insufficient to review the issue and, therefore, we decline further consideration of that contention. Ibid.
However, we will consider defendant's challenge regarding whether he was afforded the rights and relief contemplated by the recently implemented FMP. "New Jersey faces an unprecedented increase in mortgage foreclosures[,]" and "[t]he high incidence of foreclosures has had a negative financial and social blight effect on many New Jersey communities, with social dislocation, declining housing values, neighborhood blight, homelessness, and a general decline in neighborhood morale and safety." See Administrative Office of the Courts, New Jersey Foreclosure Mediation 1 (Oct. 2009), available at http:// www.judiciary.state.nj.us/civil/foreclosure/ 11290_foreclosure_med_info.pdf. The question presents an important public issue warranting review.
It is helpful to provide some necessary background. The New Jersey Fair Foreclosure Act (Act), N.J.S.A. 2A:50-53 to -68, "establishes the basis for foreclosure of mortgages." Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 106 n. 2, 892 A.2d 646 (2006). As a matter of public policy, the Legislature intended to afford homeowners "every opportunity to pay their home mortgages, and thus keep their homes[,]" while also benefiting lenders when "residential mortgage debtors cure their defaults and return defaulted residential mortgage loans to performing status." N.J.S.A. 2A:50-54; Gonzalez v. Wilshire Credit Corp., 411 N.J.Super. 582, 589, 988 A.2d 567 (App. Div.2010). The Act "was designed to make clear the rights and remedies of both borrowers and lenders prior to and throughout the foreclosure process." Wells Fargo Home Mort., Inc. v. Stull, 378 N.J.Super. 449, 456, 876 A.2d 298 (App. Div.2005). Generally, the Act obligates lenders to provide specific notice to borrowers prior to filing a complaint and during a foreclosure action. See EMC Mort. Corp. v. Chaudhri, 400 N.J.Super. 126, 137-38, 946 A.2d 578 (App.Div.2008).
Once a residence is the subject of a foreclosure action, a homeowner-mortgagor "shall have the right at any time, up to the entry of final judgment [of foreclosure]. . . to cure the default" by satisfying arrearages that accumulated on their mortgage debt and bringing their loan current. N.J.S.A. 2A:50-57(a). Following entry of a final judgment of foreclosure, a homeowner-mortgagor has ten days to object to the confirmation of the sale, R. 4:65-5, and the right to redeem by paying the mortgage obligation in full. Carteret Sav. & Loan Ass'n., F.A. v. Davis, 105 N.J. 344, 348-49, 521 A.2d 831 (1987).
The 2008 economic crisis caused a marked increase in unemployment, a decrease in real estate equity and stagnation of the resale housing market. In response, the Legislature enacted a series of bills designed to stave off the number of financially distressed homeowners losing their homes to foreclosure. First enacted effective September 15, 2008, the Save New Jersey Homes Act of 2008, N.J.S.A. 46:10B-36 to -52, was an immediate response to address the needs of "[m]any thousands of New Jersey homeowners . . . at risk of losing their homes as a result of mortgage foreclosures in the immediate future[.]" N.J.S.A. 46:10B-37(a). The law allowed renegotiation of the terms of mortgage loans that had became financially unworkable for borrowers in an effort to avoid foreclosure. The law principally seeks to assist buyers who qualified for low introductory mortgage rates, but were then unable to meet their obligation once the interest rate was reset to a higher, variable rate.
*863 This was followed by the Mortgage Stabilization and Relief Act, N.J.S.A. 55:14K-82 to -87, enacted on January 9, 2009, which recognized "the difficulties encountered by homeowners who are delinquent, or are in danger of becoming delinquent, on their mortgage payment[s]" and found it "necessary to establish a number of programs to assist these homeowners." N.J.S.A. 55:14K-83(h). Also effective January 9, 2009, measures requiring lenders to file specific reports regarding the nature and number of foreclosures were adopted. N.J.S.A. 46:10B-49 to -52. These provisions incorporated a six-month forbearance period before the lender could pursue foreclosure of a "High Risk Mortgage" to allow the homeowners to pursue loan modification or work-outs in the Judiciary's FMP. Applicable to this matter, a High Risk Mortgage is defined as: "the first mortgage loan that has one or more of the following characteristics: . . . . a reset mortgage interest rate that increases the initial interest rate by two or more percentage points[.]" N.J.S.A. 46:10B-50(a)(1).
"With New Jersey home foreclosures at record levels, all three branches of the state government [] joined in implementing emergency measures." Michael Booth, N.J. Tackling Foreclosure Problem Through Mortgage Loans, Mediation, 195 N.J.L.J. 149 (Jan. 16, 2009). The FMP is a joint effort instituted by the New Jersey Judiciary, the Office of the Attorney General, the Public Advocate, the Department of Banking and Insurance, the New Jersey Housing and Mortgage Finance Agency, and Legal Services of New Jersey, designed to aid the increasing number of owners facing foreclosure. See Press Release, Office of the Attorney General, Statewide Mortgage Foreclosure Mediation Program Launched (Jan. 9, 2009), available at http://www.nj.gov/oag/ newsreleases09/pr20090109a.html.
The program is designed to apply to "foreclosure actions that have not gone to sheriff's sale." See New Jersey Foreclosure Mediation, supra, at 3. When the court has entered the foreclosure judgment and the writ of execution has been issued, but the sheriff's sale has not been held, homeowners are "required to file a motion seeking an order staying the sheriff's sale and directing the case to mediation." Ibid.
A November 17, 2008 Supreme Court emergency order, effective January 5, 2009, entered for the purpose of addressing the numerous filings labeled a "mortgage foreclosure crisis,"[2] relaxed certain Rules to aid implementation of the FMP's provisions. See Notice to the Bar, Residential Foreclosure Mediation ProgramRule Relaxation Order 2-3 (Nov. 19, 2008), http://www.judiciary.state. nj.us/notices/2008/n081120a.pdf. Courts were directed to encourage mediation in all foreclosure cases and, specifically, must utilize the FMP whenever a homeowner files opposition in a foreclosure proceeding. See Press Release, New Jersey Judiciary, Judiciary Announces Foreclosure Mediation Program to Assist Homeowners at Risk of Losing Their Homes (Oct. 16, 2008), available at http://www.judiciary. state.nj.us/pressrel/pr081016c.htm.
Even in situations where mediation is not mandated, homeowners may nonetheless request to participate in the program up until the date of the sheriff's sale. See New Jersey Foreclosure Mediation, supra, at 1. However, except for staying *864 the sheriff's sale while mediation is pending, participation in the program does not prevent lenders from continuing with foreclosure proceedings. Id. at 2.
Initially, a homeowner who sought bankruptcy relief was not eligible to participate in the FMP. The Bankruptcy Court recognized the benefits of the program and adopted a vicinage order permitting lenders to participate even though the homeowner had filed for bankruptcy protection. See General Order Clarifying That Participation in the New Jersey Foreclosure Mediation Program Does Not Violate the Automatic Stay (May 18, 2009), available at http://www.njb.uscourts.gov/notice/2009_05_19_JHW-Gen_Order_Re_State_Court_ Foreclosure_Mediation-05-18-09.pdf.
Homeowners qualify for the FMP if (1) they are the owner-occupant of a one- to three-family residential property; (2) the property is their primary residence; and (3) they are the borrower on the mortgage loan being foreclosed. See New Jersey Foreclosure Mediation, supra, at 1-2; see also Video: Court Clips (New Jersey Judiciary), available at http://www.youtube. com/watch?v=dxWApHB5W14. Eligible homeowners have access to housing counselors, attorneys, and court-trained mediators in an effort to "resolve foreclosure actions by proposing work-out and payment arrangements that accommodate the circumstances of distressed borrowers and the financial interests of lenders." See New Jersey Housing and Mortgage Finance Agency, Request for Proposals for Legal Services for the New Jersey Judiciary's Foreclosure Mediation Program, 1 ¶ 1.1 (December 29, 2008).
Lenders must serve information and instructions to homeowners to participate in the program with the summons and complaint. See Rule Relaxation Order, supra, at 2-3. A second notice describing the mediation program is mailed to the homeowner sixty day after the complaint by the Administrative Office of the Courts. New Jersey Foreclosure Mediation, supra, at 3. Finally, the lender must provide a notice of mediation attached to the notice of motion for judgment with the proof of amount due. Ibid.
While a homeowner need not have the assistance of a housing counselor or attorney, it is clear these advisors may attend the mediation session and provide the homeowner with assistance in completing the required paperwork. Id. at 4; see New Jersey Judiciary, Individual Instructions (For Homeowners Seeking Mediation Who Have Not Met With a Housing Counselor) (Mar. 16, 2010), available at http:// www.judiciary.state.nj.us/civil/forms/ 11270_hud_njhmfa_borrower_instruct.pdf. The services of the mediator and the housing counselor are free. See New Jersey Judiciary, Notice of Foreclosure Mediation Availability (June 22, 2009), available at http://www.judiciary.state.nj.us/civil/forms/ 11284_fm_available.pdf.
Also, qualified homeowners are provided with legal representatives who contract with the New Jersey Housing and Mortgage Finance Agency. These attorneys provide free legal services to income-eligible homeowners participating in the FMP. See N.J. Association of Professional MediatorsForeclosure Mediation Section, http://www.njapm.org/content/foreclosure-mediation-section. Single person households with income up to $50,000 qualify for free legal representation, as do two-or-more person households with incomes up to $100,000. Ibid. If a homeowner qualifies for free legal assistance, the housing counselor refers them to the appropriate attorney in the county where they reside. Ibid.
Represented homeowners receive the following services from their appointed attorneys:

*865 1. A personal meeting between the client and assigned attorney in the client's home county;
2. Review by the attorney of the client's Foreclosure Mediation and Financial Worksheet and all supporting documentation;
3. Review by the attorney of any other financial or otherwise relevant documents, including, but not limited to, the mortgage and note being foreclosed upon;
4. Review by the attorney of the housing counselor's proposed work-out for that client;
5. Attorney representation of the client prior to and at the mediation session, if a mediation session occurs, to work out new mortgage terms or other agreements with the lender acceptable to the client.
[Ibid.]
Mediations are successful when the interests of the homeowners and lenders align; homeowners stay in their homes, paying their mortgages, while lenders avoid foreclosure costs, carrying charges, and reduce the number of non-performing loans in their portfolio. New Jersey Foreclosure Mediation, supra, at 1. The main factor affecting the likelihood of achieving a loan workout is affordability, that is the homeowner's ability to satisfy the modified obligation. Before mediation, a homeowner submits the designated Worksheet and a workout proposal, usually completed with the assistance of the housing counselor, showing the homeowner's income and expenses. See New Jersey Judiciary Foreclosure Mediation Financial Worksheet (Apr. 6, 2010), available at http:// www.judiciary.state.nj.us/civil/forms/ 11269_hud_njhmfa_med_financial_wkst. pdf. Financial documentation must be attached to the Worksheet, including the last filed federal tax return, proof of income, bank statements for the prior two months, and, if self-employed, a copy of the profit and loss statements for the past six months. Ibid.
With this basic understanding in mind, we turn to defendant's argument that he was "denied a meaningful opportunity to participate" in the FMP. Defendant asserts that, "had [he] been provided with an attorney and a professional housing counselor as the architects of the Mediation Program intended," he would have obtained a loan workout because he would have had the Worksheet completed by the time mediation commenced.
In ordering mediation to take place, the court gave defendant the benefit of the newly enacted program.[3] The judge related all necessary information and instructions regarding completion of the Worksheet and the nature of mediation proceedings. Defendant was given all documents that fully and plainly describe the process, including available assistance from housing counselors and, to those who meet the income thresholds, attorneys.
We point out that a homeowner is not required to utilize a housing counselor or an attorney in mediation; however, we are very much aware that these professionals are beneficial in guiding the homeowner through the process. Admittedly, the program was in its first month of operation when mediation was ordered in this matter and, understandably, defendant may not have immediately grasped the entirety of the process. However, within one week the situation was rectified, and Meredith began guiding him.[4]
Meredith aided defendant's completion of the Worksheet and helped him assemble *866 his proposal for a loan workout. The income documentation defendant provided revealed a shortfall, such that on June 2, 2008, his monthly expenses exceeded his income by $450. At that time, defendant's request to further adjourn the sale was denied based upon his inability to afford the debt, even as modified.[5]
Thereafter, despite the technical conclusion of mediation, Meredith and the lender continued to discuss a resolution. Defendant was instructed to gather further proofs of his partner's income and agreement to contribute toward the mortgage debt and to obtain written leases from his tenants. Meredith's efforts, as related in her June 9, 2009 testimony, suggested plaintiff had not fully evaluated defendant's submissions. She successfully persuaded the lender to again review defendant's request and the court extended the redemption period.
The FMP, like all complementary dispute resolution programs, "constitute[s] an integral part of the judicial process." R. 1:40-1. Mediation enables the participants to attempt to forge a mutually acceptable resolution to a dispute. In this regard, mediators take "an active role in promoting candid dialogue `by identifying issues [and] encouraging parties to accommodate each others' [sic] interests'" to reach a settlement. State v. Williams, 184 N.J. 432, 447, 877 A.2d 1258 (2005) (quoting Michael L. Prigoff, Toward Candor or Chaos: The Case of Confidentiality in Mediation, 12 Seton Hall Legis. J. 1, 2 (1988)). However, an order to participate in mediation does not mandate that one party accept the proposed resolution offered by the other.
At the point mediation was available, defendant's options were limited. A final judgment of foreclosure had already been entered. Not only had defendant not paid his mortgage loan for two years, but the judgment awarded attorney's fees and costs. Unfortunately, defendant's financial disclosures revealed an income shortfall after payment of his monthly expenses. The record reveals this impasse was the root of the failed mediation.
Defendant's income was limited by the irregularity with which he acquired and retained tenants. Further, besides routine living expenses, he carried the costs of acquiring and maintaining an investment property. The mortgage payment under the initial loan was $2,390. Plaintiff attempted to modify the obligation by reducing the interest rate from nine and one-quarter to six per cent. Unfortunately, due to the increase in debt resulting over the period of non-payment, this change only reduced the monthly payment to $2,300. The entirety of defendant's financial burden, including attorney's fees and other outstanding costs, outweighed his ability to pay the residential loan, even as modified.
Following our review, we conclude defendant was afforded all the benefits the mediation program was designed to provide. We conclude there is no evidence defendant was treated unfairly in mediation because he was self-represented. Moreover, nothing suggests he was ill-advised. It is unfortunate that a workout was not feasible. As the trial judge noted, "it doesn't always work out, it doesn't always end happily."
Affirmed.
NOTES
[1] Judge Ashrafi did not participate in oral argument. He joins the opinion with counsel's consent for the purposes of disposition.
[2] "Foreclosure filings reached 46,130 in the 12-month period ending in September [2008], a 46 percent increase from the 31,667 notices in the previous 12 months." Booth, supra, 195 N.J.L.J. at 149.
[3] The record does not include the transcript of this proceeding.
[4] Nothing in the record reveals whether defendant met the income limitations to be afforded counsel as provided in the Housing and Mortgage Finance Agency guidelines at the time of mediation.
[5] The transcript of this proceeding is not included in the record.